# United States Court of Appeals
## For the First Circuit
### <u>For the First Circuit</u>

No. 23-1626

SANDRA RODRÍGUEZ-COTTO; RAFELLI GONZÁLEZ-COTTO,

Plaintiffs, Appellees,

v.

JENNIFFER A. GONZÁLEZ-COLÓN, Governor of Puerto Rico, in the
official capacity and as representative of the Commonwealth of
Puerto Rico; LOURDES L. GÓMEZ TORRES, Secretary of the
Department of Justice, in the official capacity; ARTURO GARFFER,
Secretary of Puerto Rico Department of Public Safety, in the
official capacity; JOSEPH GONZÁLEZ FALCÓN, Commissioner of the
Puerto Rico Police Bureau,[*]

Defendants, Appellants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, <u>U.S. District Judge</u>]

---

Before

Gelpí, Hamilton,[**] and Aframe,
<u>Circuit Judges</u>.

---

   [*] Pursuant to Fed. R. App. 43(c)(2), Jenniffer A.
González-Colón has been substituted for Pedro R. Pierluisi-Urrutia
as Governor of Puerto Rico, Lourdes L. Gómez Torres has been
substituted for Domingo Emanuelli Hernández as Secretary of the
Department of Justice, Arturo Garffer has been substituted for
Alexis Torres Rios as Secretary of Puerto Rico Department of Public
Safety, and Joseph González Falcón has been substituted for Antonio
Lopez-Figueroa as Commissioner of the Puerto Rico Police Bureau.

   [**] Of the Seventh Circuit, sitting by designation.

Francisco J. González-Magaz, with whom Francisco González P.S.C. and Omar Andino Figueroa, Solicitor General of Puerto Rico, were on brief, for appellant.

Brian Hauss, with whom Tyler Takemoto, Scarlet Kim, American Civil Liberties Union Foundation, and Fermín L. Arraiza-Navas, American Civil Liberties Union of Puerto Rico, were on brief, for appellee.

Bradley D. Jones, Shelby Kostolni, and Stinson LLP on brief for Hon. Frank J. Bailey, Hon. Eugene R. Wedoff, Hon. Bruce A. Markell, and Professor David R. Kuney, as amicus curiae, in support of appellees.

Gabriel Rottman, Mara Gassmann, Reporters Committee for Freedom of the Press, and University of Virginia School of Law First Amendment Clinic, on brief for The Reporters Committee for Freedom of the Press, The Center for Investigative Reporting, Inc., Dow Jones & Company, Inc., First Amendment Coalition, Hearst Corp., The Inter American Press Association, The Massachusetts Newspaper Publishers Association, The McClatchy Company, LLC, The Media Institute, The National Freedom of Information Coalition, National Newspaper Association, National Press Photographers Association, New England Newspaper and Press Association, Inc., The New York Times Company, Radio Television Digital News Association, The Society of Environmental Journalists, Society of Professional Journalists, Student Press Law Center, and Time USA, LLC, as amicus curiae, in support of appellees.

Clare R. Norins and First Amendment Clinic, University of Georgia School of Law, on brief for The Electronic Frontier Foundation, The Foundation for Individual Rights and Expression, Free Press, Freedom of the Press Foundation, and PEN American Center, Inc., as amicus curiae, in support of appellees.

---

August 4, 2026

---

**GELPÍ**, **Circuit Judge**.    Puerto Rico enacted Law 20 to promote the public safety of its citizenry during emergencies and disasters.    Article 5.14(a) of Law 20 criminalizes certain false statements made during governor-declared emergencies.    See P.R. Laws Ann. tit. 25, § 3654(a).    Today, we consider the constitutionality of this provision.

Sandra D. Rodríguez-Cotto and Rafelli González-Cotto (the "Journalists") filed an action under 42 U.S.C. § 1983 against the Governor of Puerto Rico and other officials[1] (collectively, the "Government") seeking a declaratory judgment that Article 5.14(a) facially violates the First Amendment, alongside an injunction barring its enforcement.    The district court granted relief to the Journalists.    Because we conclude that the challenged provision is a content-based regulation that does not survive strict scrutiny, we affirm.

**I.**

In 2017, Puerto Rico enacted the Puerto Rico Department of Public Safety Act, also known as Law 20.    Law 20 grants the Governor of Puerto Rico several powers, including the ability to "declare through a proclamation that a state of emergency or disaster exists" during "emergency or disaster situations."[2]

---

[1]    These officials include the Secretary of the Department of Justice, the Secretary of the Puerto Rico Department of Public Safety, and the Commissioner of the Puerto Rico Police Bureau.

[2]    Law 20 defines emergency as "any situation or

- 3 -

§ 3650.  As originally enacted, Article 5.14 of Law 20 criminalized, among other offenses, raising false alarms regarding "the imminent occurrence of a catastrophe in Puerto Rico" and spreading rumors or giving false alarms "about non-existent abnormalities" during a declared state of emergency.[3]  On March 12, 2020, then-Governor Wanda Vázquez-Garced declared a state of emergency because of the COVID-19 pandemic.[4]  Less than a month later, on April 5, 2020, Article 5.14 was amended to criminalize the "transmission . . . through any social network or mass media" of "false information with the intention of creating confusion, panic or collective public hysteria, with respect to any proclamation or executive order decreeing a state of emergency . . . ."  The amendment was intended to discourage "conduct undermin[ing] the safety of the people and the social order" that "endanger[ed] the health and lives of citizens."

circumstance that warrants the necessary state and municipal efforts geared towards saving lives and protecting property, health, and public safety, or minimizing or avoiding the risk of a disaster in any part of Puerto Rico" and disaster as "an event that results in damages to the property as well as deaths and/or injuries in one or more communities." Id. § 3643(c), (e).

    [3]    This provision was originally located at Article 6.14, but it was renumbered as Article 5.14 in 2020.  To avoid confusion, we refer to it as Article 5.14 throughout this opinion.

    [4]    The state of emergency due to the COVID-19 pandemic lasted three years.  Other states of emergency were declared in September 2017 due to Hurricane Maria, in January 2020 due to an earthquake, and in May 2024 due to torrential rains.

The Journalists conduct independent, investigative reporting covering the Puerto Rican government. During the COVID-19 pandemic, the Journalists reported, among other things, on the effects of the pandemic on Puerto Rico and the government's handling of the emergency. They published numerous articles critical of the Government's actions during this period.

In May 2020, the Journalists filed this action challenging Article 5.14(a) on First and Fourteenth Amendment grounds. On July 13, 2020, the Governor signed P.R. Law No. 66-2020 ("Law 66"), which substantially amended Article 5.14 by modifying section (a) and deleting a different section that had been added just three months earlier. After the Law 66 amendment, section (a) of Article 5.14 made it a crime for a person to purposefully, knowingly, or recklessly

> [g]ive[] a warning or false alarm, knowing that the information is false, in relation to the imminent occurrence of a catastrophe in Puerto Rico, or disseminate[], publish[], transmit[], transfer[] or circulate[] through any means of communication, including the media, social networks, or any other means of dissemination, publication or distribution of information, a notice or a false alarm, knowing that the information is false, when as a result of its conduct it puts the life, health, bodily integrity or safety of one or more persons at imminent risk, or endangers public or private property[,]

during a governor-declared state emergency or disaster. § 3654(a). Violating Article 5.14(a) constitutes a misdemeanor

punishable by a maximum of six months' imprisonment, a $5,000 fine, or both; however, if the "notice or false alarm" causes over $10,000 in damages, the offense becomes a felony punishable by a "fixed term" of three years' imprisonment. Id.

In response to post-complaint changes to Article 5.14(a) made by Law 66, the Journalists filed an amended complaint and renewed their request for a preliminary injunction, asserting that the enacted changes did not cure the constitutional deficiencies of Article 5.14. In due course, the district court consolidated the Journalists' request for preliminary and permanent injunctive relief. See Fed. R. Civ. P. 65(a)(2).[5] It then determined that Article 5.14(a) was unconstitutional and entered a permanent injunction barring Puerto Rico from enforcing the law.

In so doing, the district court found that Article 5.14(a) is content-based because it distinguishes between true and false speech. Applying strict scrutiny, the district court acknowledged the Government's compelling interest in protecting lives and property during emergencies but found no evidence that the statute's broad speech restrictions were necessary to achieve that goal. The court further concluded that,

---

[5] Before consolidating, the district court gave both parties two weeks to inform the court of any "special measures" required for consolidation, and to "supplement their brief[s] on issues awaiting disposition." Neither party requested special measures nor moved to supplement their filings.

unlike other false statement statutes, Article 5.14(a) lacked meaningful limiting features and was impermissibly over and underinclusive.  Ultimately, the court held that Article 5.14(a) could "not be enforced consistently with the First Amendment." After unsuccessfully seeking reconsideration, the Government timely appealed.[6]

## II.

We review a district court's grant of a permanent injunction for abuse of discretion, assessing conclusions of law de novo and factual findings for clear error.  Shell Co. (P.R.) v. Los Frailes Serv. Station, Inc., 605 F.3d 10, 19 (1st Cir. 2010); García v. State Ins. Fund Corp., 169 F.4th 13, 21 (1st Cir. 2026).

## III.

On appeal, the Government asserts the district court erred by failing to conclude that (1) Garrison v. Louisiana, 379 U.S. 64 (1964) and Frese v. Formella, 53 F.4th 1 (1st Cir. 2022) place Article 5.14(a) beyond the First Amendment's reach and that (2) Article 5.14(a) is not a content-based regulation warranting strict scrutiny.  It also contends that Article 5.14(a) should

---

[6]    We asked the parties to brief all issues, including whether the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") barred this action.  Because the parties agree that PROMESA does not bar this appeal, we assume that we may entertain it consistent with PROMESA.

survive strict scrutiny if that standard were to be applied.  We address these arguments in turn.

**A.**

The First Amendment "prohibits the enactment of laws 'abridging the freedom of speech.'"  Reed v. Town of Gilbert, Ariz., 576 U.S. 155, 163 (2015) (quoting U.S. Const. amend. I).[7] Generally, this "means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."  Alvarez, 567 U.S. at 716 (citation modified). There are, however, a "few" exceptions to this general rule.  Id. at 717.  These exceptions enable the government to restrict speech based on its content and are confined to certain "historic and traditional categories of expression long familiar to the bar," such as incitement, obscenity, defamation, speech integral to criminal conduct, and fighting words.  Id. (citation modified).

These types of unprotected expression operate as a presumptively closed set: "[N]ew categories of unprotected speech may not be added to the list by a legislature that concludes certain speech is too harmful to be tolerated."  Brown v. Ent. Merchants Ass'n, 564 U.S. 786, 791 (2011).  Nor do courts have "freewheeling authority to declare new categories of speech

_____

[7]    The amendment applies "to the States through the Fourteenth Amendment," Reed, 576 U.S. at 163, and to Puerto Rico as a territory, see Pérez-Guzmán v. Gracia, 346 F.3d 229, 231 n.1 (1st Cir. 2003).

outside the scope of the First Amendment." <u>Alvarez</u>, 567 U.S. at 722 (quoting <u>United States</u> v. <u>Stevens</u>, 559 U.S. 460, 472 (2010)); <u>cf.</u> <u>Nat'l Inst. of Family & Life Advocates</u> v. <u>Becerra</u>, 585 U.S. 755, 767 (2018) (declining to exempt "professional speech" from First Amendment protections). Only when offered "persuasive evidence that a novel restriction on content is part of a long (if heretofore unrecognized) tradition of proscription" may a court decide that a category of speech is unprotected by the First Amendment. <u>Ent. Merchants Ass'n</u>, 564 U.S. at 792.

The Government nonetheless urges that Article 5.14(a) falls within the scope of First Amendment permissibility. Specifically, it contends that Puerto Rico's false reporting statute is constitutional because it criminalizes only knowingly or recklessly false statements. In support of this argument, it suggest that two cases, <u>Garrison</u>, 379 U.S. 64, and <u>Frese</u>, 53 F.4th 1, hold statements of this sort to be outside the First Amendment's ambit. The Government misreads those cases.

<u>Garrison</u> and <u>Frese</u> involve criminal defamation statutes, <u>see</u> <u>Garrison</u>, 379 U.S. at 65; <u>Frese</u>, 39 F.4th at 6; they thus fall within one of the historic and traditional exceptions to the protections for content-based speech. <u>See</u> <u>Stevens</u>, 559 U.S. at 468-69. These cases therefore stand only for the proposition that defamatory speech made knowingly or recklessly is unprotected by the First Amendment. <u>See</u> <u>Garrison</u>, 379 U.S. at 73 ("[E]ven where

- 9 -

the utterance is false, the great principles of the Constitution which secure freedom of expression in this area preclude attaching adverse consequences to any except the knowing or reckless falsehood." (emphasis added)). Critically, these types of defamation cases involve false statements that cause a "legally cognizable harm" to reputation. In contrast, Article 5.14(a) "targets falsity and nothing more." Alvarez, 567 U.S. at 719. Contrary to the Government's suggestion, there is no historical category of unprotected speech for all speech that is knowingly false or made with reckless disregard of the truth.

Alvarez supports this conclusion. There, the four-justice plurality "reject[ed] the notion that false speech should be in a general category that is presumptively unprotected." 567 U.S. at 722; see also id. at 718 (noting there is not "any general exception to the First Amendment for false statements"). And the two concurring justices likewise recognized that false statements generally merited First Amendment protection. See id. at 731-32 (Breyer, J., concurring in the judgment); 281 Care Comm. v. Arneson, 766 F.3d 774, 783 (8th Cir. 2014) ("[A]ll six [j]ustices in Alvarez agreed that false statements do not represent a category of speech altogether exempt from First Amendment protection."); Animal Legal Def. Fund v. Kelly, 9 F.4th 1219, 1232 (10th Cir. 2021) (same).

Article 5.14(a) is not a criminal defamation statute,

nor does it fall under any other category exempted from First Amendment protection. Accordingly, the law merits additional First Amendment analysis.

**B.**

The initial step in that analysis is to identify the appropriate level of scrutiny to apply. To do so, we must determine whether Article 5.14(a) is a content-based or content-neutral law because content-based laws generally merit strict scrutiny while content-neutral laws usually receive only intermediate scrutiny. See Signs for Jesus v. Town of Pembroke, 977 F.3d 93, 101 (1st Cir. 2020).

A law regulating speech is content-based if it "target[s] speech based on its communicative content." Reed, 576 U.S. at 163. Otherwise stated, content-based laws regulate speech "because of the topic discussed or the idea or message expressed." Id. We must therefore consider whether Article 5.14(a) "'on its face' draws distinctions based on the message a speaker conveys." Id. We conduct this inquiry by asking whether "'enforcement authorities' [must] 'examine the content of the message that is conveyed to determine whether' a violation has occurred." McCullen v. Coakley, 573 U.S. 464, 479 (2014) (quoting FCC v. League of Women Voters of Cal., 468 U.S. 364, 383 (1984)).

These principles dictate that Article 5.14(a), a statute "target[ing] falsity and nothing more," is inherently

- 11 -

content-based because an official would have to determine the veracity of a speaker's statement to decide whether the law was violated. Alvarez, 567 U.S. at 719. The Government disagrees, contending that Article 5.14(a) is content-neutral because liability under the statute depends "not [on] the content of the speech, but whether it takes the form of a warning or an alert, or if it results in a risk to public safety." That argument fails. Article 5.14(a) criminalizes the provision or dissemination of a "warning or false alarm, knowing that the information is false." P.R. Laws Ann. tit. 25, § 3654(a). The "falsity" requirement requires an assessment of the veracity of the speaker's words. Since a violation of the statute "depends . . . on what [a person] say[s]" and how an official construes that statement, Article 5.14(a) is content-based. McCullen, 573 U.S. at 479 (quoting Holder v. Humanitarian L. Project, 561 U.S. 1, 27 (2010)) (citation modified).

Moreover, Article 5.14(a) contains other provisions that implicate content. First, it targets false speech "in relation to the imminent occurrence of a catastrophe in Puerto Rico." § 3654(a). Thus, only a subset of false statements is covered and that subset is defined by content, i.e., whether the statement is related to a catastrophe. Such a provision closely resembles the content-based law at issue in Alvarez, which governed false statements about military decorations and awards. 567 U.S. at

- 12 -

717; see also Susan B. Anthony List v. Driehaus, 814 F.3d 466, 473 (6th Cir. 2016) (holding a false statement law "govern[ing] speech about political candidates during an election" was content-based).

Second, Article 5.14(a) prohibits the distribution of false information that "as a result . . . puts the life, health, bodily integrity or safety of one or more persons at imminent risk, or endangers . . . property." § 3654(a). This provision concerns how false speech affects listeners, which also renders it content based. See Forsyth Cnty., Ga. v. Nationalist Movement, 505 U.S. 123, 134 (1992) ("Listeners' reaction to speech is not a content-neutral basis for regulation"); Bible Believers v. Wayne Cnty., Mich., 805 F.3d 228, 252 (6th Cir. 2015) (holding that a "message does not lose its protection under the First Amendment due to the . . . reaction of those who hear it").

Having determined that Article 5.14(a) is a content-based restriction, there is one remaining wrinkle in determining the applicable level of scrutiny. The plurality in Alvarez concluded that the false statements statute at issue there merited the "most exacting scrutiny."[8] 567 U.S. at 724 (citation modified). That view is consistent with the Supreme Court's typical position that "laws regulating speech based on its subject

---

[8] In this context, "'most exacting scrutiny' is interchangeable with strict scrutiny." 281 Care Comm., 766 F.3d at 783 n.7.

- 13 -

matter or communicative content are presumptively unconstitutional" and thus "content-based restrictions trigger strict scrutiny." Chiles v. Salazar, 607 U.S. 627, 640 (2026) (citation modified). However, Justice Breyer's concurring opinion in Alvarez suggested that while "[l]aws restricting false statements about philosophy, religion, history, the social sciences, the arts, and the like . . . call[] for strict scrutiny," laws "concern[ing] false statements about easily verifiable facts" warrant only intermediate scrutiny. Id. at 732 (Breyer, J., concurring). Generally, the Supreme Court has not adopted Justice Breyer's view that lesser forms of scrutiny should apply to certain types of content-based regulations.[9] David S. Han, Transparency in First Amendment Doctrine, 65 Emory L.J. 359, 398 (2015) (discussing the Supreme Court's "preference for th[e] nearly categorical application of strict scrutiny in cases involving content-based speech restrictions").

In any case, Article 5.14(a) is not the kind of regulation governing "false statements about easily verifiable facts" to which Justice Breyer would apply less rigorous scrutiny. Alvarez, 567 U.S. at 732 (Breyer, J., concurring). As we have

---

[9] Justice Breyer has offered variations of this argument in multiple First Amendment contexts. E.g., Reed, 576 U.S. at 176-77; Barr v. Am. Assoc. of Pol. Consultants, Inc., 591 U.S. 610, 645 (2020) (Breyer, J., concurring in part); Sorrell v. IMS Health, 564 U.S. 552, 585-86 (Breyer, J., dissenting).

- 14 -

discussed, Article 5.14(a) covers statements related "to the imminent occurrence of a catastrophe in Puerto Rico." § 3654(a). In times of disaster and emergency covered by the statute, there are many kinds of false statements regulated by Article 5.14(a) that would not be easily or quickly verifiable. Consider, for example, statements about the efficacy of masks during the COVID-19 pandemic or the damage likely to arise from a storm that is presently offshore. These are assertions for which there is not easy verification but that would be covered by Article 5.14(a). Moreover, given that the law is about restricting speech related to a governor's action in declaring a state of emergency or disaster, Article 5.14(a) may operate in a "political context[]," which brings it outside the kinds of falsity laws that Justice Breyer views as permissible under his proposed lesser form of scrutiny. Alvarez, 567 U.S. at 738 (Breyer, J., concurring). In sum, Article 5.14(a) is the kind of content-based regulation that should be subjected to strict scrutiny under the Alvarez plurality and concurrence.

## c.

Strict scrutiny "requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." Reed, 576 U.S. at 171 (citation modified). It is "the most demanding test known to constitutional law." City of Boerne v. Flores, 521 U.S. 507, 534

- 15 -

(1997); see also Free Speech Coal., Inc. v. Paxton, 606 U.S. 461, 484 (2025) (noting the standard is "unforgiving"). The Government cannot meet that most exacting standard here.

The Government asserts that Article 5.14(a) serves Puerto Rico's compelling interest in limiting false information that risks public safety during an emergency. We acknowledge that this objective is "not without significance," Alvarez, 567 U.S. at 724, particularly during the kinds of natural disasters and public health crises that have caused states of emergency in Puerto Rico. See, e.g., Does 1-6 v. Mills, 16 F.4th 20, 32 (1st Cir. 2021) ("Few interests are more compelling than protecting public health against a deadly virus.").

However, this is not the end of the inquiry. See Alvarez, 567 U.S. at 725. The Government must also show that Article 5.14(a) is "narrowly drawn" to serve and "actually necessary" to achieve its compelling interest. Ent. Merchants Ass'n, 564 U.S. at 799. Narrow tailoring requires a "demonstrat[ion] that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." McCullen, 573 U.S. at 467. Here, the Government asserts -- with little substantiation -- that the statute is the "least restrictive means to ensure the free and trusting exchange of information during an emergency."

A comparison of Article 5.14(a) with other false reporting statutes illustrates that the Puerto Rican regulation is far from the least restrictive means for achieving the Government's aim. Cf. Alvarez, 567 U.S. at 720-21 (discussing other false statement statutes when assessing the Stolen Valor Act). Generally, regulations on false assertions comport with the First Amendment when they contain "limitations of context, requirements of proof of injury, and the like" which "narrow the statute to a subset of lies where [the] specific harm is more likely to occur." Id. at 736 (Breyer, J., concurring). Certain false reporting or false alarm statutes pass constitutional muster because they "require proof that substantial public harm be directly foreseeable, or, if not, involve false statements that are very likely to bring about that harm." Id. at 735 (Breyer, J., concurring) (referring to 47 C.F.R. § 73.1217, the Federal Communications Commission's ("FCC") Broadcast Hoaxes rule, and 18 U.S.C. § 1038, the federal false information and hoaxes statute).

The Government asserts that Article 5.14(a) is one such statute because it is "based [on] and significantly similar to Section 250.3" of the Model Penal Code ("MPC"), which "[p]resumably" would not contain unconstitutional language.[10]

---

[10]    Section 250.3 provides that

A person is guilty of a misdemeanor if he initiates or circulates a report or warning of an impending bombing or other crime or

- 17 -

Section 250.3 limits its scope to require the speaker to know that the false report "is likely" to cause harm.  See MPC § 250.3.  And the FCC's Broadcast Hoaxes rule goes even a step further: To incur liability under this rule, it must be "foreseeable that broadcast[ing] [false] information will cause substantial public harm" and the broadcast must actually and "directly cause substantial public harm."  47 C.F.R. § 73.1217(a).  But even if Article 5.14(a) was modeled on one of these rules, the Puerto Rican statute does not contain analogous limitations.  Under Article 5.14(a), liability attaches "when as a result" of making a false statement, persons or property are put "at imminent risk." P.R. Laws Ann. tit. 25, § 3654(a).  No actual harm is required, no knowledge that a harm is likely to occur is mandated, and "risk" is undefined.  "[I]mminent risk" is thus an inherently nebulous concept that provides little protection for a speaker.  As such, Article 5.14(a) is far broader than both section 250.3, on which the Government relies, and the Broadcast Hoaxes rule, which was cited approvingly by Justice Breyer.

Moreover, Article 5.14(a) is unbounded in other

catastrophe, knowing that the report or warning is false or baseless and that it is likely to cause evacuation of a building, place of assembly, or facility of public transport, or to cause public inconvenience or alarm.

MPC § 250.3 (Am. Law. Inst. 1980).

dimensions. The federal hoaxes statute, also referenced by Justice Breyer in Alvarez, criminalizes the conveyance of false or misleading information (1) "where such information may reasonably be believed" and (2) when the information relates to specific violations of federal law or about the armed forces. See 18 U.S.C. § 1038(a). By contrast, Article 5.14(a) contains no such restrictions. As we have already explained, the regulation establishes liability if there is an "imminent risk" of personal or property harm, regardless of what listeners actually believe. Moreover, and as the Government concedes here, Article 5.14(a) could cover even "incredible assertions" so long as the statements are "in relation to the imminent occurrence of a catastrophe in Puerto Rico." § 3654(a). The law could even cover jokes, satire, or fiction.[11] Compare with 47 C.F.R. § 73.1217(b) (permitting an exemption from the broadcast hoax rule if a program is accompanied by a disclaimer that it is fiction). We further note that, unlike the FCC's Broadcast Hoaxes regulation, 47 C.F.R. § 73.1217(c), "catastrophe" appears to be undefined in Law 20, adding to our

---

[11] At oral argument, the Government suggested that whether liability would attach to a humorist stating King Kong and Godzilla were coming to destroy the island of Puerto Rico --in the vein of Orson Welles' faux radio broadcast of an alien invasion, The War of the Worlds -- could be a matter that is left to prosecutorial discretion because such a scenario would fit within the text of Article 5.14(a). That Article 5.14(a) could result in liability for even such statements further indicates it would have a significant chilling effect on free speech and is not narrowly tailored.

concern that Article 5.14(a) could be construed to reach innumerable statements regardless of their relation to public emergencies.

The Government also claims that a saving limitation on Article 5.14(a) is that it operates only during states of emergency. But Law 20 permits the Governor to declare such emergencies through proclamation, and since the law's enactment in 2017, at least four states of emergency have been declared, with one spanning over three years. Where "governmental power has no clear limiting principle," there is the potential for the government to exercise "broad censorial power" that chills free speech. Alvarez, 567 U.S. at 723. We should be wary of regulations like Article 5.14(a) that permit the Government to so quell speech.

The Government has also failed to show that Article 5.14(a) is necessary to achieve its goals. Strict scrutiny requires that there "be a direct causal link between the restriction imposed and the injury to be prevented." Alvarez, 567 U.S. at 725. Although the Government asserts that such a link exists, it "points to no evidence to support its claim" that the kinds of false information regulated by Article 5.14(a) endanger public safety during states of emergency. Id. at 726. Without such evidence, the Government cannot establish this necessary causal link. See United States v. Playboy Ent. Grp., Inc., 529

U.S. 803, 819 (2000) (requiring a "careful assessment and characterization of an evil in order to justify" a sweeping speech regulation).

Finally, the Government "has not shown, and cannot show, why counter[ ]speech would not suffice to achieve its interest." Alvarez, 567 U.S. at 726. The Government asserts -- without record support -- that counter speech would be ineffective because "[o]nce the false information is released, the damage is done." This does not explain why counter speech would be inadequate to achieve its interest. Consider again the COVID-19 pandemic. Statements arguing that masks are ineffective to stop disease transmission could be countered by government messaging explaining the benefits of wearing masks. Perhaps there are false statements that immediately cause harm such that counter speech would be ineffective, but this law is not limited to that category.

In short, Article 5.14(a) does not meet the exacting standard of strict scrutiny.[12] It represents an impermissible restriction of speech, particularly during times of emergency when it is most imperative that the public be well-informed and the government held to account. "[S]ince informed public opinion is the most potent of all restraints upon misgovernment," we look

---

[12] Given all that we have discussed here, we think the statute would also fail to survive intermediate scrutiny, even if that were the appropriate standard.

upon such a restriction "with grave concern."  <u>Grosjean</u> v. <u>Am.</u> <u>Press Co.</u>, 297 U.S. 233, 250 (1936).  The district court correctly determined that Article 5.14(a) violates the First and Fourteenth Amendments.

## IV.

For these reasons, we **<u>affirm</u>**.